IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANTWAN RICHARDSON, | ) | |
|---|---|---|
| | ) | Civil Action No. 3: 15-cv-0087 |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Kim R. Gibson |
| | ) | |
| GERALD ROZUM, et al., | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants (ECF No. 37) be granted.

## II. REPORT

### A. Relevant and Material Facts

Plaintiff, Antwan Richardson, is a former Pennsylvania state prisoner. At the time Plaintiff filed this lawsuit, he was incarcerated at SCI Camp Hill. The complaint, based on events which occurred while Plaintiff was incarcerated at SCI Somerset, sets forth the following claims: (i) excessive force in violation of the Eighth Amendment against CO Kimmel; (ii) failure to protect against Sgt. Shumaker; (iii) three retaliation claims in violation of the First Amendment against (1) Major Grupp and Capt. Snyder, (2) Lt. Bakos, and (3) Lt. Hopfer and Chaplain Maust; (iv) a Fourteenth Amendment due process claim against Hearing Examiner Dupont; and (v) a supervisory liability claim against Superintendent Rozum.

On April 4, 2013, CO Kimmel was working as the Receiving and Discharge (R&D) Officer. When the inmate warehouse crew came in to the R&D area to be searched, Plaintiff attempted to avoid CO Kimmel. Plaintiff admits that he was moving around one of his inmate

1

co-workers who had not yet been searched when CO Kimmel told him to wait. CO Kimmel became suspicious because of recent thefts from the warehouse and he ordered Plaintiff to stand in the holding tank to be strip searched.

At that point, Plaintiff became argumentative and disrespectful. CO Kimmel directed Plaintiff to the holding tank, but Plaintiff refused orders to enter the holding tank and stopped in the doorway. The parties offer conflicting descriptions as to what happened next and the interaction was not captured on camera.

According to Defendants, CO Kimmel placed his hands on Plaintiff's upper chest and shoulder and guided him back into the cell. However, Plaintiff testified in his deposition that CO Kimmel slapped/shoved him once in the chest causing Plaintiff to stumble backwards two or three steps. Then CO Kimmel grabbed him by the collar of his jacket and pushed him into the cell, backing him up against a half-wall where he held him for a brief period of time. Sgt. Schumaker was working in the Sergeant's office in the R&D area at the time of the incident. He exited his office when he heard an argument between Plaintiff and CO Kimmel. By the time he arrived on the scene though the argument was over. Sgt. Schumaker spoke to Plaintiff, who asked if he would get a misconduct, but did not mention anything about abuse.

A short while later, Plaintiff told Lt. Bakos that he had been abused by CO Kimmel who pushed him into the holding cell. However, Plaintiff then apologized and stated that he did not want to make a claim of abuse. Plaintiff also stated that he did not want to be seen by medical. CO Kimmel decided not to issue Plaintiff a misconduct.

The following day, on April 5, 2013, Plaintiff filed a sick call request claiming that his back and neck hurt as a result of being physically assaulted by CO Kimmel. On April 6, 2013, Plaintiff filed a complaint using the Inmate Abuse Hotline claiming than an officer pushed him

2

in the chest, causing him to stumble, and threatened him. On that day, Plaintiff also filed Grievance 454701 claiming abuse. Lt. Bakos conducted the Office of Special Investigations and Intelligence ("OSII") investigation and found that Plaintiff's claim of abuse was full of discrepancies and was false. As a result, Lt. Bakos issued Plaintiff Misconduct B618241 for unsworn falsification to authorities and lying to an employee. Hearing Examiner Dupont found Plaintiff guilty of lying to an employee and sentenced him to 60 days disciplinary custody time in the restricted housing unit. Plaintiff appealed the finding of guilt on the misconduct and submitted Grievance 464179. On appeal, the misconduct was upheld.

On April 7, 2013, Plaintiff was seen by a nurse for complaints of pain in his lower back and neck. No open areas or bruising or any other injuries were noted. On April 8, 2013, Plaintiff sent a letter to the Pennsylvania State Police alleging an assault on April 4, 2013. He also wrote the Somerset County Sheriff seeking to press charges on CO Kimmel.

Plaintiff was seen by the medical department on four occasions between April 10 and May 10, 2013. Plaintiff was seen a final time by the medical department for back pain on July 21, 2013. During the course of his medical treatment, Plaintiff had x-rays and was given medication. The x-ray results showed no acute fracture or dislocation. He had two physical therapy sessions and while he complained of pain, he had normal range of motion and strength.

On July 16, 2013, Plaintiff filed Grievance 468955 claiming that he was denied access into the dining hall to break his Ramadan fast and to receive the Sahoor bag for the next morning's breakfast because he did not have a sticker on his identification card stating he was fasting. The grievance was denied and it was explained to Plaintiff that Chaplain Maust had investigated Plaintiff's claim and found that Plaintiff, who was just released from the RHU, had a Ramadan sticker but it was removed at his own request. Chaplain Maust also reported that he

3

had spoken with RHU staff who told him that Plaintiff was no longer a Ramadan participant at his request.

Defendants have filed the instant motion for summary judgment. In support of their motion, Defendants have filed the OSII Investigation report, Grievance 454701, Misconduct B618241, Grievance 464179, Grievance 468955, Plaintiff's medical records related to his alleged back and neck pain, the Declaration of Brian Hyde, and Plaintiff's deposition transcript, together with a Concise Statement of Undisputed Material Facts. (ECF Nos. 39 and 40). In response, and despite this Court's express direction, and grant of an extension of time, Plaintiff has elected to file nothing - no response to Defendants' motion for summary judgment, Concise Statement, or other responsive pleading or controverting evidence has been filed. Plaintiff has, therefore, adduced no evidence in support of his claims, and the facts set forth in Defendants' Motion papers and Concise Statement are accepted as true, in accordance with the procedural rules.

In the absence of any timely response by Plaintiff, the Court will deem the motion for summary judgment to be ripe for resolution.

**B.  Standard of Review**

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment

will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdit for the nonmoving party." *Id.* at 250. "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Pearson v. Prison Health Svc.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal marks and citation omitted).

Further, because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his filings. *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). However, a *pro se* plaintiff, like a represented plaintiff, may not rely solely on his complaint to defeat a summary judgment motion. *Anderson,* 477 U.S. at 256. ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."

In order to survive a motion for summary judgment on a § 1983 claim, Plaintiff must produce evidence that the Defendants acted under color of state law, a fact not in dispute in this case, and that Plaintiff was deprived of a federal constitutional right. When a motion for summary judgment is unopposed, the Court must still assess whether the moving party has met its burden of demonstrating that it is entitled to judgment as a matter of law. It is appropriate to grant the defendant's motion for summary judgment where (i) the pro se plaintiff has received adequate notice that failure to file any opposition may result in a judgment against him, and (b) the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law. *See, e.g.,* Fed.R.Civ.P. 56(e) **Failing to Properly Support or Address of Fact**. ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the

5

motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . .); LCvR 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts . . ., which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.); *Carp v. Internal Revenue Serv.*, 2002 WL 373448, *2 (D.N.J. Jan. 28, 2002) ("When the nonmoving party fails to oppose the motion for summary judgment by written objections, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support.").

**C.     Discussion**

   1.     *Excessive Force Claim Against CO Kimmel*

Plaintiff alleges that CO Kimmel used excessive force by giving him a slap/shove to the chest and then placing his hand on Plaintiff's collar while "maneuvering" him into the holding cell. The Cruel and Unusual Punishments Clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers. *See Whitley v. Albers,* 475 U.S. 312, 318-19 (1986). In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Smith v. Mensinger,* 293 F.3d 641, 649 (3d Cir. 2002). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. *Id*. (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id.*

Examining the circumstances of this case under the appropriate factors, and bearing in mind the Supreme Court's admonition that "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim," *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010), it is clear that the force applied was not so excessive as to present a cognizable Eighth Amendment claim. Plaintiff contends that CO Kimmel shoved him once then pushed him against a wall. Plaintiff did not sustain any significant injuries. The conduct alleged by Plaintiff, even if true, is exactly the kind of *de minimus* use of force that cannot support an Eighth Amendment excessive force claim.

Further, as to Plaintiff's claims of verbal threats, it is well established that verbal threats alone do not state a constitutional claim. *Gannaway v. Berks County Prison*, 439 F. App'x 86 (3d Cir. 2011).

Consequently, the Court recommends that Defendants are entitled to summary judgment as to this claim.

### 2. *Failure to Protect Claim Against Sgt. Shumaker*

Plaintiff alleges that Sgt. Shumaker should have figured out what was going on between him and CO Kimmel and arrived at the scene sooner. The only record evidence is that Sgt. Shumaker heard an argument, left his office, and came to the scene, arriving after CO Kimmel had left Plaintiff in the cell. A failure to protect claim is subject to scrutiny under the Eighth Amendment. To prevail on this claim, Plaintiff must meet both prongs of the *Farmer* test: (i) that he was incarcerated under conditions posing an "objective, sufficiently serious" risk of harm and (i) that Sgt. Shumaker had a "sufficiently culpable state of mind," which means deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

7

In this case, because there was no unconstitutional use of force, Plaintiff cannot meet the first prong of the *Farmer* test. Additionally, the only evidence is that Sgt. Shumaker came to the scene as soon as he heard the argument between Plaintiff and CO Kimmel, and when he arrived at the scene, the interaction was over. Accordingly, there is no evidence that Sgt Shumaker was deliberately indifferent. Plaintiff has failed to meet the second prong of *Farmer* as well.

Therefore, the Court recommends that Defendants are entitled to summary judgment as to this claim.

> 3. *Retaliation Claims against Major Grubb, Capt. Snyder, Lt. Bakos, Lt. Hopfer, and Chaplain Maust*

A prisoner claiming a First Amendment retaliation claim must show that: (1) his conduct was constitutionally protected; (ii) he suffered "adverse action" at the hands of the defendant, and (iii) there was a causal connection between the two. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Plaintiff brings three retaliation claims in this case, none of which has merit.

The first retaliation claim is against Major Grubb and Capt Snyder. Plaintiff alleges that neither defendant believed him when they were involved in investigating his allegation of abuse by CO Kimmel and that Capt. Snyder called Plaintiff a liar and threated to have someone wreck his cell. Defendants argue that this claim is barred for failure to exhaust administrative remedies.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001). In order to exhaust remedies, a plaintiff must pursue a grievance through final administrative review. *Salley v. PA Dept. of Corr.*, 181 F. App'x 258, 264 (3d Cir. 2006). Inmates who fail to fully exhaust

administrative remedies may not subsequently litigate those claims in federal courts. *Ghana v. Holland,* 226 F.3d 175, 184 (3d Cir. 2000).

Defendants have attached Plaintiff's grievances showing that Plaintiff never claimed that either Major Grubb or Capt. Snyder retaliated against him in any grievance. Plaintiff has not submitted any evidence to refute the accuracy of these records. Therefore, Defendants Major Grubb and Capt. Snyder are entitled to summary judgment on this claim as Plaintiff failed to exhaust his administrative remedies.

With respect to Plaintiff's second retaliation claim, he alleges that Lt. Bakos retaliated against him by issuing him a misconduct and making false statements after determining that Plaintiff's allegation of abuse was fabricated. Defendants argue that Plaintiff has abandoned this claim because when asked about it in his deposition, he stated that Lt. Bakos was at the initial meeting immediately after the incident with CO Kimmel "or I couldn't have really put him on the paperwork."

Even assuming that this claim is not abandoned, the Court recommends that summary judgment be granted on this claim because the evidence is clear that Lt. Bakos did not retaliate against Plaintiff. Plaintiff was issued a misconduct for lying about an allegation of abuse and found guilty of lying to an employee. The summary judgment record demonstrates that there was sufficient "quantum of evidence" supporting the finding of guilt. Plaintiff has failed to submit any evidence to the contrary. Therefore, Lt. Bakos is entitled to summary judgment on the merits of this claim.

With respect to Plaintiff's third retaliation claim, he claims that Lt. Hopfer denied him one dinner and breakfast during Ramadan during 2013 in retaliation for making the allegation of abuse. While not specifically alleging retaliation against Chaplain Maust, Plaintiff claims that

Chaplain Maust lied in an investigation into his grievance. Plaintiff, once again, has failed to produce any evidence to support his allegations. In his deposition, Plaintiff admitted that he has no evidence of any causation between the allegation of abuse and the denial of two meals months later, but stated that Defendants were "probably" aware of the investigation and "if I was a gambling man," he would bet the two events were connected.

The summary judgment record reflects that Chaplain Maust's investigation revealed that Plaintiff had voluntarily removed himself from the Ramadan list, which explains why he did not have a sticker to receive Ramadan meals when he attempted to go into the dining hall. Plaintiff has not submitted any evidence to refute Defendants' submission.

Therefore, based on the record evidence, a jury could not find that Defendants took an adverse action against Plaintiff that would deter a person of ordinary firmness from continuing to exercise his rights under the First Amendment or that Defendants' adverse action was motivated by Plaintiff's protected conduct. Thus, it is recommended that Defendants are entitled to summary judgment on this claim as well.

4.  *Due Process Claim against Hearing Examiner Dupont*

Plaintiff claims that Hearing Examiner Dupont found him guilty of the misconduct written by Lt. Bakos without reading all of the allegedly exculpatory statement he gave. Plaintiff also alleges that Hearing Examiner Dupont did not view the video evidence. The Court finds that both claims are without merit.

The misconduct finding reflects that the Hearing Examiner had received a sworn statement from Lt. Bakos indicating that there was no video of the incident and that he made his decision based on the independent evidence, as well as the discrepancies in Plaintiff's version of the incident. In addition, the misconduct finding notes that Plaintiff admitted that he was not

10

truthful in the version of the abuse allegation he gave.  Therefore, ample evidence supported the finding of guilt.

It appears that Plaintiff is attempting to bring a due process claim with regard to his allegation that the Hearing Examiner was not "impartial."  It is well settled that a prisoner has no due process rights that are implicated by prison disciplinary proceedings, since the sanction imposed in such proceedings does not normally impinge on a protected liberty interest, as a period of time in disciplinary custody does not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Connor,* 115 S.Ct. 2293, 2301 (1995)).

Here, as a result of his misconduct, Plaintiff was sent to the RHU for sixty days.  This is not the type of atypical and significant hardship that triggers due process protection.  Therefore, it is recommended that Defendants are entitled to summary judgment as to this claim.

     5.    *Supervisory Liability Claim against Superintendent Rozum*

Defendants argue that the complaint should be dismissed against Superintendent Rozum because there are no allegations in the Complaint against Superintendent Rozum.  When asked in his deposition what his claim was against Superintendent Rozum, Plaintiff responded that his claim was that Superintendent Rozum was in charge of everyone and that he denied Plaintiff's grievance appeals.

A supervisor may be liable for unconstitutional acts by his or her subordinates in two general ways:  (1) the supervisor, " 'with deliberate indifference to the consequences, established and maintained a policy, practice or custody which directly caused [the] constitutional harm' "; or (2) the supervisor " 'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's

unconstitutional conduct." *Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 316 (3d Cir. 2014) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004*), rev'd on other grounds sub nom. Taylor v. Barkes*, -- U.S. ---, 135 S. Ct. 2042 (2015); *see also Wharton v. Danberg*, 854 F.3d 234 241 n.10 (3d Cir. 2017).

A review of the complaint reveals no facts alleging personal involvement by Superintendent Rozum under either theory. To the extent that Plaintiff seeks to assert that that Superintendent Rozum is automatically liable for the actions of his subordinates, this is a classic example of *respondeat superior*, and liability cannot be predicated solely on the operation of *respondeat superior.*

Plaintiff fares no better on his attempt to establish liability against Superintendent Rozum based upon his involvement in the handling of Plaintiff's grievances and appeals. "A bare allegation of 'rubber stamping' does not suffice to establish a cognizable constitutional violation." Simonton v. Tennis, 437 F. App'x 60, 61 (3d Cir. 2011). Further, a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right. *Id*. at 61 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)).

Accordingly, the Court recommends that summary judgment be granted to Superintendent Rozum.

**D. Conclusion**

For the reasons set forth above, it is respectfully recommended that Defendants' motion for summary judgment be granted in its entirety. Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 72(b)(2), and LCvR 72.D.2, Defendants' Objections are

due by **June 23, 2017**. Because service of this Report and Recommendation is being made on Plaintiff via mail, his Objections are due by **June 26, 2017**. The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: June 9, 2017

                By the Court:

                s/ Cynthia Reed Eddy
                Cynthia Reed Eddy
                United States Magistrate Judge


cc: ANTWAN RICHARDSON
   315 Burchfield Street, Apt. 1
   Harrisburg, PA 17104
   (via U.S. First Class Mail)

   Timothy Mazzocca
   Office of Attorney General
   (via ECF electronic notification)